IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA BYERLY, | ) | |
| | ) | Civil Action No. 1:13-270 |
| Plaintiff, | ) | |
| | ) | United States District Judge |
| v. | ) | Cathy Bissoon |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | United States Magistrate Judge |
| COMMISSIONER OF SOCIAL | ) | Cynthia Reed Eddy |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

It is respectfully recommended that the Commissioner's motion for summary judgment (*ECF No. 11*) be denied, and that Byerly's motion for summary judgment (*ECF No. 9*) be denied to the extent that it requests an award of benefits and granted insofar as it seeks a vacation of the Commissioner's decision, and a remand for further proceedings.

**II.  REPORT**

**A.  Introduction**

Plaintiff Linda Byerly ("Byerly") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("Act") [42 U.S.C. §§ 401-433]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56.[1]  For the reasons that follow, it is respectfully recommended that the

---

[1] The Court acknowledges that judicial review under the Act is not governed by the standards generally applicable under Federal Rule of Civil Procedure 56. *Banks v. Shalala*, 43 F.3d 11, 13-14 (1st Cir. 1994); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985). In this context, the procedure typically employed at

1

Commissioner's decision be vacated, and that the case be remanded for further consideration of Byerly's application for disability insurance benefits.

**B.      Procedural History**

Byerly protectively applied for disability insurance benefits on June 28, 2011, alleging the existence of a statutory "disability" beginning on that date. R. at 122, 134. The application was administratively denied on July 27, 2011. R. at 58. Byerly responded on July 29, 2011, by filing a request for an administrative hearing. R. at 62-63. On July 25, 2012, a hearing was held in Erie, Pennsylvania, before Administrative Law Judge ("ALJ") James J. Pileggi. R. at 25. Byerly, who was represented by counsel, appeared and testified at the hearing. R. at 30-41. Karen S. Krull ("Krull"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. R. at 41-44. In a decision dated August 14, 2012, the ALJ determined that Byerly was not "disabled" within the meaning of the Act. R. at 10-21.

On August 27, 2012, Byerly sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. at 6. The Appeals Council denied the request for review on August 2, 2013, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. at 1. Byerly commenced this action on September 6, 2013, seeking judicial review of the Commissioner's decision. ECF Nos. 1-2. Byerly and the Commissioner respectively moved for summary judgment on February 17, 2014, and March 14, 2014. ECF Nos. 9 & 11. The cross-motions for summary judgment filed by the parties are the subject of this report and recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

---

the summary-judgment stage of litigation "merely serves as a convenient method under which both parties may present appropriate briefs in support [of] and in opposition to the[ir] respective positions." *Sumler v. Bowen*, 656 F.Supp. 1322, 1330 (W.D.Ark. 1987).

### C. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental

impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether

4

the claimant is capable of performing other jobs existing in significant numbers in
the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

**D.    The ALJ's Decision**

In his decision, the ALJ determined that Byerly had not engaged in substantial gainful activity subsequent to her alleged onset date. R. at 12. Byerly was found to be suffering from bipolar disorder, depression, an anxiety disorder, hypertension, diabetes (with glucose monitoring), a kidney infection, a sinus infection, and obesity. R. at 12-13. Her bipolar disorder,

depression and anxiety disorder were deemed to be "severe" under the Commissioner's regulations. R. at 12; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). The ALJ concluded that Byerly's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 13-15.

In accordance with 20 C.F.R. § 404.1545, the ALJ assessed Byerly's "residual functional capacity"[2] as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple and repetitive tasks involving routine work processes and settings not involving high-stress (defined as high quotas or close attention to quality production standards); she should not be required to work in an environment where she would be exposed to crowds of people and she would not be able to engage in interaction with the public at large; and she should not be required to engage in teamwork or team-type activities.

R. at 15-16. Byerly had "past relevant work"[3] experience as a cashier, fast food manager and store manager. R. at 41, 139, 145. The Dictionary of Occupational Titles ("DOT") classified all three of those positions as "light"[4] jobs. R. at 41. The cashier job was categorized as a "semi-

---

[2] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

skilled"[5] position, while the fast food manager and store manager jobs were categorized as "skilled"[6] positions. R. at 41. Krull testified that Byerly had actually performed her duties as a cashier and fast food manager at the "medium"[7] level of exertion. R. at 41. In response to a question describing a hypothetical individual with the abilities and limitations contained within the ALJ's residual functional capacity assessment, Krull stated that the described individual would not be able to perform the duties of Byerly's prior positions. R. at 42.

Byerly was born on October 30, 1961, making her forty-nine years old on her alleged onset date and fifty years old on the date of the ALJ's decision. R. at 30. During the first four months of the relevant period of time, she was classified as a "younger person" under the Commissioner's regulations.[8] 20 C.F.R. § 404.1563(c). Byerly became a "person closely approaching advanced age" on October 30, 2011, when she reached the age of fifty. 20 C.F.R. § 404.1563(d). She had a high school education and an ability to communicate in English. R. at

---

[5] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[6] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).
[8] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five. 20 C.F.R. §§ 404.1563(c), 416.963(c).

7

30, 137, 139; 20 C.F.R. § 404.1564(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Byerly could work as a janitor, cleaner or laundry worker. R. at 21. Krull's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A).[9] R. at 42-43.

 E. **Discussion**

Byerly completed high school in 1979. R. at 30, 139. She briefly worked as a cashier and fast food manager. R. at 31, 139, 145. In August 2001, Byerly started to work as a store manager in the retail industry. R. at 139, 145. She first sought psychiatric treatment from Dr. Baron T. Denniston on March 30, 2010. R. at 32-33, 246. Byerly stopped working on her alleged onset date of June 28, 2011. R. at 31, 138. Her departure was apparently precipitated by a panic attack occurring during the course of a workday. R. at 40-41. At the hearing, Byerly testified that the tone of her supervisor's voice had triggered the panic attack. R. at 41. On July 18, 2011, Dr. Denniston observed that Byerly was "not ready to resume work." R. at 213.

Dr. Denniston detailed Byerly's alleged mental limitations on a medical assessment form dated September 19, 2011. R. at 234-236. On the form, Dr. Denniston indicated that Byerly could not interact with supervisors, deal with work-related stress, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, or understand, remember and carry out job instructions. R. at 234, 236. Byerly's abilities in several other areas were described as being "poor." R. at 234. Dr. Denniston responded in the negative when asked whether Byerly was capable of completing a normal workday or workweek. R. at 235. Dr. John

---

[9] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

8

Almquist, a treating physician, noted on September 26, 2011, that Byerly was "seeing a psychiatrist and ha[d] been advised to stay off work temporarily." R. at 241.

Dr. Kerry Brace, a nonexamining psychological consultant, reviewed Byerly's medical records in connection with her application for disability insurance benefits. On July 25, 2011, Dr. Brace opined that Byerly was not *per se* disabled under Listings 12.04 and 12.06. R. at 49. Discussing specific functional limitations, Dr. Brace reported that Byerly was "moderately" restricted in her abilities to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods of time, work in coordination with others without being distracted, respond appropriately to criticism from supervisors, get along with co-workers without exhibiting behavioral extremes, respond appropriately to changes in a work setting, travel in unfamiliar places, and use public transportation systems. R. at 52-53. Dr. Brace asserted that Byerly was "markedly" limited in her ability to interact appropriately with members of the general public. R. at 52. Dr. Nghia Van Tran, a nonexamining medical consultant, opined on July 27, 2011, that Byerly was physically capable of engaging in an unrestricted range of "medium" work activities. R. at 50-51. The views expressed by Dr. Brace and Dr. Van Tran led to the initial denial of Byerly's application for benefits. R. at 58.

On June 25, 2012, Dr. Denniston asserted that Byerly had previously been in an "extremely stressful work environment." R. at 246. He stated that "work-based stressors" had exacerbated her mental condition, thereby rendering her "unable to function occupationally." R. at 247. Dr. Denniston insisted that he could not predict when Byerly would be able to return to work. R. at 247. He indicated that she was "extremely" impaired in the areas of social functioning, maintaining her concentration, persistence or pace, and adapting to stressful

9

conditions. R. at 247. According to Dr. Denniston, Byerly's activities of daily living were "moderately" impaired. R. at 247.

In determining Byerly's residual functional capacity, the ALJ accorded "little weight" to the opinions expressed by Dr. Denniston and Dr. Van Tran. R. at 18. He gave Dr. Brace's assessment "great weight." R. at 18. Rejecting Dr. Van Tran's assertion that Byerly could perform only "medium" work, the ALJ concluded that Byerly was physically capable of performing "a full range of work at all exertional levels." R. at 15. The nonexertional limitations found by the ALJ were attributed to Byerly's mental impairments. R. at 16, 19.

At the third step of the sequential evaluation process, the ALJ considered Byerly's mental impairments under Listings 12.04 and 12.06. R. at 13-15. Discussing one "B" criterion applicable under those Listings, the ALJ concluded that Byerly had "moderate limitations" in the area of social functioning. R. at 13. He purported to accommodate those limitations by restricting Byerly to a range of work that did not involve exposure to crowds, interaction with members of the general public, or the performance of "team-type activities." R. at 16. At the hearing, Krull testified that no jobs existed in the national economy for an individual who would either ignore instructions given by a supervisor or react negatively to supervision in general. R. at 43. The ALJ's residual functional capacity assessment did not include specific restrictions pertaining to Byerly's interactions with supervisors. R. at 15-16.

Byerly contends that it was impermissible for the ALJ to find "moderate limitations" in her social functioning without limiting her contact with supervisors. ECF No. 10 at 5-10; ECF No. 14 at 1-3. That argument is unavailing. At the second and third steps of the sequential evaluation process, a claimant's mental impairments must be considered in relation to "four broad functional areas." 20 C.F.R. § 404.1520a(c)(3). One of those areas is the claimant's

"social functioning." *Id.* The ALJ's finding that Byerly was "moderately" limited in the area of social functioning necessitated determinations that her mental impairments were sufficiently "severe" to satisfy the second step of the process but not *per se* disabling at the third step of the process. 20 C.F.R. § 404.1520a(c)(3)-(4), (d)(1)-(3). Because the case was not resolved at either of those steps, the ALJ was required to assess Byerly's residual functional capacity. 20 C.F.R. § 404.1520a(d)(3). The "moderate limitations" in Byerly's social functioning were only relevant for the purpose of determining *whether* the ALJ needed to make a residual functional capacity finding. 20 C.F.R. § 404.1520a(d)(1)-(3). They did not dictate the specific *content* of that finding. *Hux v. Astrue*, Civil Action No. 2:11-1306, 2012 WL 4498845, at *6, 2012 U.S. Dist. LEXIS 141641, at *17 (W.D.Pa. Aug. 27, 2012). Findings relating to the second and third steps may have some bearing on the subsequent assessment of a claimant's residual functional capacity. *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004). In this case, however, the "moderate limitations" in Byerly's social functioning were reflected in the portion of the ALJ's residual functioning capacity determination precluding jobs involving exposure to crowds of people, interaction with members of the general public, and the performance of "team-type activities." R. at 16, 19. The existence of a restriction *specific* to contact with supervisors does not inevitably flow from the mere presence of "moderate limitations" in the "broad functional area" of "social functioning." 20 C.F.R. § 404.1520a(c)(3).

Byerly also maintains that the ALJ erred in rejecting Dr. Denniston's opinion solely on the basis of Dr. Brace's assessment. ECF No. 10 at 10-12. An opinion expressed by a treating source does not necessarily bind the Commissioner on the issue of a claimant's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011). When the medical evidence is genuinely disputed, an administrative law judge is generally "free to choose the

medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). Nonetheless, the probative force of any medical opinion must be judged in relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999). An assessment submitted by a nonexamining consultant will not normally constitute "substantial evidence" of a claimant's ability to work when it is contradicted by reports prepared by treating and examining sources. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). That is particularly true in cases involving claimants with mental impairments. Under normal circumstances, a mental health professional cannot "formulate medical opinions based upon objective findings derived from clinical tests." *Sheehan v. Metropolitan Life Insurance Co.*, 368 F.Supp.2d 228, 255 (S.D.N.Y. 2005). "In contrast to some physical impairments, which can be verified or discounted solely by reference to reports of objective medical tests, mental impairments are generally identified on the basis of a psychiatric professional's interactions with an impaired individual." *Haisley v. Sedgwick Claims Management Services, Inc.*, 776 F.Supp.2d 33, 50 (W.D.Pa. 2011). Since Dr. Brace never examined Byerly, her assessment did not provide the ALJ with a sufficient evidentiary basis for rejecting the opinion of disability expressed by Dr. Denniston. *Morales*, 225 F.3d at 317.

The ALJ's reliance on Dr. Brace's assessment in this case is particularly problematic because the basis for that assessment is not clear from the record. In the narrative portion of her consultative report, Dr. Brace made reference to separate reports respectively submitted by Dr. Almquist and Dr. Denniston on July 18, 2011, and July 22, 2011.[10] R. at 53. According to Dr.

---

[10] In a handwritten treatment note dated July 18, 2011, Dr. Denniston stated that Byerly was "not ready to resume work." R. at 213. In her consultative report, Dr. Brace referred to a "report" received from Dr. Denniston on July 22, 2011. R. at 53. On the basis of the existing record, the Court cannot determine

Brace, the reports sent by the two treating sources both indicated that Byerly was "unable to work." R. at 53. The reports prepared by Dr. Almquist and Dr. Denniston (and discussed by Dr. Brace) do not appear to be included within the existing administrative record.[11] Since Dr. Brace never examined Byerly, it is difficult to understand how she could have determined that Byerly was *not* disabled based on contrary opinions expressed by treating sources.[12]

For the foregoing reasons, the ALJ's decision is not supported by substantial evidence. The statutory provision authorizing the commencement of this action provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "An immediate award of benefits is appropriately only when the evidentiary record has been fully developed, and when the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). That standard is not satisfied in this case. The reports underpinning Dr. Brace's opinion appear to be absent from the administrative record. R. at 53. Furthermore, the Supreme Court has recognized that, unlike detached consultants, treating physicians are more likely to favor a finding of "disability." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).

---

whether the handwritten treatment records provided by Dr. Denniston constituted the "report" discussed by Dr. Brace. R. at 213-227.

[11] The documentary record contains copies of blank "medical source statement" forms that were mailed to Dr. Almquist. R. at 207-212. It is not clear whether Dr. Almquist later filled out the forms.

[12] The Court acknowledges that the ultimate issue of a claimant's "disability" is reserved for the Commissioner's determination, and that a statement by a treating physician declaring a claimant to be "unable to work" does not mean that an award of benefits is warranted. *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990); 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). It is not clear whether Dr. Almquist and Dr. Denniston merely asserted that Byerly was "unable to work," or whether they actually provided more detailed information about her medical condition. R. at 53.

13

Byerly's mental abilities were never evaluated by a consultative examiner. Consultative examiners often bring a unique combination of expertise and impartiality to the adjudicatory process. *Hansford v. Astrue*, 805 F.Supp.2d 140, 149-150 (W.D.Pa. 2011). Byerly apparently worked until her alleged onset date of June 28, 2011. R. at 138. Her departure was evidently triggered by a single encounter with her supervisor. R. at 40-41. She protectively applied for disability insurance benefits that same day. R. at 134. It is not clear how a single workplace encounter could have instantaneously caused the drastic functional limitations described by Dr. Denniston. R. at 234-236, 246-248. Given that further development of the record would facilitate a more accurate determination of Byerly's status under the Act, the proper remedy in this case is a remand for further proceedings rather than an immediate award of benefits. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504-507 (3d Cir. 2009).

In light of the fact that further proceedings are required, a few additional matters should be addressed. Dr. Van Tran opined that Byerly was physically capable of performing only "medium" work. R. at 50-51, 55. Despite Dr. Van Tran's finding that Byerly had exertional limitations, the ALJ concluded that Byerly's physical impairments were not "severe." R. at 12-13. The second step of the sequential evaluation process is relatively easy for a claimant to satisfy. *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546-547 (3d Cir. 2003). Even if an impairment is not sufficiently "severe" to independently satisfy the second step, any functional limitations resulting from that impairment must still be reflected in the assessment of the claimant's residual functional capacity. 20 C.F.R. § 404.1545(a)(2). In determining that Byerly had the physical ability to "perform a full range of work at all exertional levels," the ALJ rejected Dr. Van Tran's opinion without relying on countervailing medical evidence. R. at 15, 18. Under the governing law, an administrative law judge "is not free to employ [his or] her own

expertise against that of a physician who presents competent medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If the ALJ believed Dr. Van Tran's consultative report to be unreliable, it was incumbent upon him to "secure additional evidence from another physician." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). Since no physician asserted that Byerly was physically capable of performing "a full range of work at all exertional levels," the ALJ's finding to that effect is not supported by substantial evidence. *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). At the present stage, the ALJ's error is inconsequential. The jobs identified by Krull were at the "light" and "medium" levels of exertion. R. at 21, 42-43. A claimant who is able to perform "medium" work is presumed to be capable of performing "light" work. 20 C.F.R. § 404.1567(c). In any event, the ALJ's error should not be repeated on remand.[13]

The Commissioner should be instructed to "reopen and fully develop the record" before determining whether Byerly is "disabled." *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800 (3d Cir. 2010). The existing record contains documentary evidence demonstrating that Byerly underwent a total mastectomy of the left breast on June 11, 2013. R. at 260, 271-274. That evidence was submitted to the Appeals Council in support of a request for permission to file a new application for benefits pursuant to Social Security Ruling 11-1p. R. at 260. Since the evidence pertaining to Byerly's breast impairment was never before the ALJ, it cannot be considered for the purpose of determining whether his decision is supported by substantial evidence. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 360 (3d Cir. 2011); *Matthews v. Apfel*, 239 F.3d 589, 592-595 (3d Cir. 2001). Because that evidence

---

[13] At the hearing, Byerly's counsel conceded that Byerly's hypertension and diabetes were under control. R. at 32. That does not necessarily mean that Byerly had no physical limitations. Dr. Van Tran found Byerly's description of her "significantly limited" daily activities to be "partially consistent with the limitations indicated by other evidence in this case." R. at 51.

does not appear to reflect Byerly's condition between June 28, 2011, and August 14, 2012, it would most likely not be "material" to the issues in this case even if it could otherwise be considered in the present posture. *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). Nevertheless, any evidence relating to Byerly's breast impairment should be considered by the Commissioner on remand. *Reefer v. Barnhart*, 326 F.3d 376, 381 (3d Cir. 2003). If it is determined that Byerly was not "disabled" as of June 28, 2011, but that her condition later deteriorated enough to warrant a finding of "disability," the Commissioner will need to select an appropriate onset date.

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Commissioner's motion for summary judgment (*ECF No. 11*) be denied, and that Byerly's motion for summary judgment (*ECF No. 9*) be denied to the extent that it requests an award of benefits but granted insofar as it seeks a vacation of the Commissioner's decision, and a remand for further proceedings.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court regarding Magistrate Judges, Objections to this Report and Recommendation are due by **September 11, 2014**. Failure to timely file Objections will constitute waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

By the Court:

August 28, 2014.

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: All counsel of record via CM-ECF